Good morning, Your Honor. John Whitesides for Officers John Tennis and Randy Lozoya. I will reserve four minutes for rebuttal. The landscape of this case has altered somewhat since the appeal began, first in the middle of the briefing with the issuance of this Circuit's decision in erotic service provider, which reaffirmed the rule of IDK. Then after completion of the briefing, another panel within a few weeks issued a divergent opinion, and that was the Keats case. Thus, I wrote the Rule 28J letter to this panel to apprise them of the intra-Circuit split and the corresponding constraints on what I can argue and ask this panel to do. This is your letter of June 11th? I believe so. I only wrote one, Your Honor. Oh, okay. Very well. I have it. And so what I've given thought to since that letter, which was indeed June 11, was how can we harmonize these cases, whether it's the history of the Supreme Court getting back even before Moore v. East Cleveland and coming through Roberts and then Rotary Club and Dallas v. Stanglin, or whether it's this Circuit's opinions, whether under the Due Process Clause in Ward, or as I said in the more recent divergent path that they've taken. And I do think there are two factors that we can see in common for when a constitutional right is recognized in this area of intimate relationships. Are we talking First Amendment? What I'm about to say right now would transcend which amendment. All right. In other words, I'm thinking however a court chooses to pigeonhole the association, First or Fourteenth, there are still two features that it would have in common if I put aside expressive conduct, which I feel I must given the split. And you suggest that these cases have some relevance to the Ward case? Correct. I believe Ward philosophically embodies the two factors I'm about to express. The first factor is there has to be a choice. When Roberts talks about a liberty interest in an intimate relationship, the liberty that it is speaking of is the freedom of choice. And the examples that the court gives are marriage, procreation, cohabitation. Each of those involves a choice. The second layer is does that choice rise to a level where it becomes viewed as a fundamental right for the purpose of the Constitution? And those same areas the Supreme Court identified as fundamental rights, the right to marry, the right to choose to live together, the right to choose to have children, how to raise the children. And if we look at the vast majority of cases, they involve judicial scrutiny of one of those choices, and whether or not that choice rises to a high enough level to be afforded constitutional protection. And depending upon the choice, different results have occurred. So, for example, this Court has twice held, once in IDK, once in erotic service provider, that prostitution and escort services, although a choice, do not have the quality or quantity to them that would trigger constitutional protection. The Supreme Court does the same in Dallas v. Stanglin with a dance hall. It does the same in Roberts and Rotary Club with the sort of civic benefit organizations of the J.C. and the Rotary Club. In this case, I don't think we reach either factor in a satisfactory way. As Ward pointed out when it followed the Seventh Circuit's decision in Bell, one of the problems with constitutional protection for siblings is there's no choice. Siblings do not choose one another. One does not choose one's relatives other than spouse or children. So there is no choice. The second factor we look at is what are the characteristics of a relationship? And this Court has held in other contexts that to reach a high enough level for constitutional protection, you have to be approaching one of those targets the Supreme Court has identified. Marriage, cohabitation, and procreation. Correct. So, for example, this Court in Mullen v. State of Oregon said that the mere fact that a grandparent has a biological relation with the grandchild is not enough for constitutional protection. There had to be a custodial relationship, which I would view as cohabitation in the vast majority of instances. So we believe in this case, because you have neither an association by choice, nor a level of that association that would arise to the areas the Supreme Court has identified, that there is no standing of the plaintiffs to sue. The Supreme Court generally has made those identifications in a substantive due process context. Correct. Yes, this would all be substantive. In this case, there's no issue about procedural. And so where the courts have started to diverge, understandably, because of the language in Rotary Club, is, well, which amendment does it fit under? And this Circuit analyzes all of that in IDK and says it goes under the 14th, that's the most faithful to Roberts. That's what the Court expressly said in Moore v. East Cleveland was the source of the right. And there we had a grandparent who wanted to live with a grandchild, and East Cleveland's housing ordinances forbade that. It didn't fit the definition of family. And the Court said that was unconstitutional because it deprived the grandparent and the child of substantive due process in terms of their right to live together. No Circuit has recognized at this point a protected association without an expressive component for relatives who do not live together. Well, expressive component is an element in First Amendment. And as to the other more intimate relationship, that would come under substantive due process. Correct. But let me put this to you. Is the analysis of substantive due process in familiar relations a matter of initial reassessment in view of Obergefell? I'm not familiar with that case, Your Honor. Obergefell is the same-sex marriage case. Oh, okay. Well, again, if ---- I mean, it used to be that under Glucksberg we'd have to look at historical, traditional basis to get a right under substantive due process. Right. That seems to have been abandoned in Obergefell. That would be true. And I think the way that I would harmonize that with the Court's other decisions is that even though it is not a traditional family, it still bears the indicia of cohabitation and potential child rearing that would qualify under the examples that the Court gives. So I think regardless of whether or not people are married or whether or not it's a traditional heterosexual marriage, if you're cohabitating, there's a strong argument in favor of constitutional protection. And, in fact, the Supreme Court in the case where it dealt with foster homes talks about the fact that, well, there's a possibility that there's not a biological connection, and normally we require that, but there is living together, and certainly living together over a long period of time could qualify as an intimate relationship for a foster child and parent. So I think the Court has left the door open for nontraditional relationships to qualify, depending on the particular circumstances. But I haven't seen any indication that they're going to do that outside of a household, and no other circuit has suggested that that could be done outside a household. Roberts. Counsel, I have a question about qualified immunity. Did the district court make a finding on qualified immunity? Its opinion was totally silent on the subject. Is that issue preserved? Was it preserved in the briefing? Yes. It was raised in the motion, argued by the opposition, argued in the reply. In the oral argument, frankly, we just ran out of time. There was another matter behind us, and we were so busy on the standing issue, the Court didn't ask, did the district court make a finding on qualified immunity? It's maybe too simple an approach, but if we have difficulty identifying the parameters of the right at stake, doesn't that almost by definition mean that we fail the second prong of the Cal-An test? I mean, it's hard to say it's clearly established if we can't figure out what it is. Precisely. Yeah. I mean, there's certainly no governing case that tells us the answer here. We're trying to pull pieces from different precedents and fit them together in a very complicated way. And, of course, now, on top of it, we've got an intracircuit split, which by definition would create qualified immunity. Would you identify the intracircuit split as the difference between erotic services and IDK and Keats? Correct. But Keats can be read as being, if not consistent, at least distinguishable, right? Yes. It can be for the purposes of this case. On the general subject of does a First Amendment relationship claim require expressive conduct, I feel frustratingly that Keats forecloses me from arguing that to you. But as you just pointed out, there are other facts about Keats that it involved the targeted disruption of a parent-child relationship where you had both cohabitation and targeted conduct that are clearly distinguishable from this case. So I would agree Keats does not control the outcome of this case. What Keats does is prevent me from arguing that a First Amendment claim would have to require expressive conduct. In Keats, there was none, unlike Lee. But you're still relying on Ward. On Ward, yes. You're still relying on Ward. Ward, I believe Ward's analysis fits this case, even though it did not expressly consider the First Amendment. Thank you very much. Do you want to save that time? Yes. Good morning, Your Honor. May it please the Court. My name is Mark Merrin. I'm here with Paul Masuhara, representing the siblings of Joseph Ward, who are in court today, killed by officers of Sacramento City after they failed to do their due diligence and hit him with their automobiles as he was crossing the street. They pursued him and shot him to death, inflicting grievous harm on his siblings, who have a right to come into court. They have standing to complain of the constitutional tort which led to their brother's death. What case do you cite for that? Well, we look directly at Roberts and Rotary to give us the guidance that emphasizes how important the sibling relationship, the family relationship, the intimate relationships are which are entitled to protection. How did you get around Ward? Ward dealt very specifically with the Fourteenth Amendment, and I think it could have gone either way. It could certainly have said that siblings are protected by the Fourteenth Amendment. There was no argument that there was a First Amendment claim, so therefore, the Court didn't have the option of saying, but they could pursue their rights under the First Amendment, as the Court did express in Lee. But what they said narrowly, what you said narrowly in Ward, was that the protection of the Fourteenth Amendment did not extend to siblings. And I think we can accept that and also rationalize the decisions of the Supreme Court in Rotary and J.C. to say, well, then where do we look to protect the intimate association relationships of siblings whose close intimate relationship has been destroyed by governmental action? And I think that it's very logical to look at the First Amendment because that is specifically targeted to preserve and protect those relationships. And the Supreme Court said there are lots of different relationships. We are not going to enumerate them all. We're not going to draw all the parameters. We're going to take the cases as they come. And with that guidance, district courts ---- to say that a First Amendment liberty and arrest exists even though there is no allegation in the complaint that it is based on expressive association, shouldn't we be asking for an en banc court to determine whether IDK and neurotic services is the law or whether Keats is the law? You're giving up the Fourteenth Amendment based on Ward, right? We feel constrained to do that, Your Honor. We are. Yes, we are. So is your argument basically that there's an intra-circuit split on the First Amendment and we should defer to an en banc tribunal to clear up that intra-circuit split? Well, I don't know the court's procedure as to whether you defer without first deciding that question. If we take your position that Keats dispenses with expressive association as a fundamental element to the exercise of a First Amendment right, something which is contrary to IDK and neurotic services, then we should ---- we find ourselves in an intra-circuit split, and that's exactly what Rule 35 of the Federal Rules of Appellate Procedure requires us to take en banc, isn't that right? Well, we don't hang our hat on the expressive element in an intimate relationship, Your Honor, of the First Amendment. No, you say it's not necessary. That's correct.  But there are a couple of cases that say it is necessary. Well, I think that the guidance that this Court has gotten from its own opinion in Lee, which recognized that the parent in that case had both a First and a Fourteenth Amendment claim, a right which was abridged when her son was seized and then extradited the next day, so clearly one would look at that and say there was both a Fourth Amendment, of course, for the son who was seized, and the Fourteenth Amendment traditionally for the parent whose relationship was interfered with, and the fact that the Court recognized the First Amendment right, I believe, is adequate authority for this Court to proceed on that basis and decide here that the court below, both in Mann and in Cower and in other instances, other district courts, in Graham, for instance, recognized that intimate relations are protected in situations where constitutional torts interfere with and deprive siblings of those close relationships. And it just makes sense. Otherwise, if you think about how — and I'm going to deal with the cohabitation question in just a moment, but let's say you have two brothers who are living together and one is seized by officers and removed, whether it's in a foster home or otherwise, well, then there's a recognized right under the First Amendment for those siblings to come into court to complain about that interference. Well, if one sibling is not just removed but is, in fact, killed, how could that then reduce the right of the remaining sibling to claim the constitutional tort? In your hypothesis, the siblings were cohabiting. Well, they may very well be cohabiting. The sibling here was not cohabiting.  Makes a difference, doesn't it? Well, actually, the complaint itself doesn't expressly deal with cohabitation. It uses the language of Roberts to indicate that they were in a relationship which presumed the intimate nature of the relationship. Iqbal and Twomley tell us that's not the way to plead. Well. You've got to plead facts, not conclusions and not statutory nor common law language. Well, we pled that they were siblings, Your Honor. We pled that they had a close relationship. But you didn't plead that they were cohabiting. That's right. We did not plead that. In fact, we don't think it's determinative. And I'm just going to address that now. The question of cohabitation, you would say, well, cohabitating when? At the time of the killing? At some time previously? Or intermittently? Or ever? Or never? Those may be factors that one would consider in assessing the nature of the relationship and the damages to which the sibling who's seeking recovery was exposed, but not to establish standing. It is too slippery and amorphous a concept. And what does cohabitation mean? Does it mean intermittent or continual? And I don't think there's been any requirement ever expressed of cohabitation. There's a phrase in Roberts that says that in the string of relationships that could be entitled to, that are entitled to First Amendment protection, includes cohabitating relatives. And even that is broader than siblings. So I don't believe that the cohabitation is a requirement. It may be an indication of the nature or the level of intimacy which would bear on recovery as opposed to standing. So I think in our case, of course, it's a difficult question. The Oberfell issue of same-sex marriage or the Graham question of a fiancé whose partner is killed, they're slightly different, but they go to the nature of the importance of the intimate protection. Kennedy. Kennedy. You've cited the Rotary case. It seems to me that the Rotary case talked about, in one, family relationships involving marriage, child-rearing, and or cohabitation are protected. And then, two, other types of relationships may be protected as well, depending on factors such as their size, purpose, selectivity, and exclusivity. Size, purpose, selectivity, and exclusivity. Relate those abstractions to me in a sibling relationship. Well, I don't think they relate to an intimate relationship. I think that's the distinction that the Court was making between expressive relationships and associational relationships. And I think that the latter comments that Your Honor has quoted relate to the nature of the association, whether it's an intimate club, for instance, or some broad organization such as the Jaycees or the Rotary. The first are the ones in that short list that identify the types of intimate relations, and I agree that marriage is clearly one. I think that family relations are also included. And whether they're- In any degree of consanguinity? Well, I think that that's a question for the Court. And it may be on a case-by-case basis, as Judge Shub said below. When he said, when he ruled in favor of the sibling standing in man, he said that he doesn't have to actually identify all the situations that could be covered. It might have to be on a case-by-case basis. But certainly, yes, there are issues, whether it's a half-brother, a step-brother. These are questions. However, brother is a word that is in common to all of them. And I think we can at least recognize that siblings are included within the protection. How far outside of that line you go may very well depend upon the additional pleading, the specific nature of the relationship that can be described to the Court. But I think we're well within the guidance that we've gotten from the Supreme Court, both in Roberts and J.C., and as recognized by this Court in Lee, that the right to proceed under the First Amendment. But if it is so clear, what is your answer to the qualified immunity argument? Well, the answer is that it was obvious that when the officers killed Joseph Mann, they were doing harm, not just to him, but to his mother, to his father, to his children, and to his siblings, at the minimum. That was obvious. What is the requirement? What is the required showing with respect to deliberateness? I notice some cases, perhaps in other circuits, require a showing of deliberate intention to kill for the purpose of depriving relationships to parents or immediate family. Well, this Court in Ward specifically addressed that question. And it said that it was unwilling, Your Honors, were unwilling to impose a requirement to show wrongful intent directed specifically at them to permit in that case parents or children to claim a violation of the Fourteenth Amendment. So we don't, this circuit does not require an intent to harm in that wrongful intent directed at them. Well, I was just wondering whether there were sufficient facts in this record that might even meet the test of deliberateness. Well, yes, we've certainly pled that he was chased and gunned down. And the precedent that we would point to that clearly establishes the unlawfulness of that would be just, would certainly be the A.B. case. That was A.B. versus C.H.P. That's 2013. The P.B. Koch, 1996. Glenn versus Washington County, Ninth Circuit, 2011. I think it was just well established that an officer had no right either deliberately that is under the standard, which is the Fourteenth Amendment standard, deliberately indifferent, or that is intent to cause harm. Those are the two alternatives. And I think both of those are well clearly established that the officer should have known and recognized would prevent them from killing Joseph Mann. Thank you. Thank you. Judge Stearns, I don't think the answer you got responded to your question. Your question dealt with the showing of targeted disassociation with an intent to disrupt a relationship. There are no allegations in this case that the officers knew anything about Mr. Mann, much less that he had relatives. So the answer that you got dealt with the underlying standard under the Fourteenth Amendment that would apply to the father's claim, which was settled, does not apply here. Here, what we're talking about is was there some intent to disrupt this family? And the answer is no. There was no such allegation. They had no idea who the person was. They did not know his identity. That's undisputed. If we go back quickly to the other points, Lee was cited to you as why there would be clear law in this area. As we pointed out in the briefs, Lee does not establish anything. First of all, of course, if you read it the way that counsel did, it would irreconcilably conflict with IDK. So we have to try to read it in a way that's harmonious. We can do that. It is true that there was a false arrest and an extradition in Lee, but that's not what the panel talked about when they talked about the First Amendment. They talked about the mother's subsequent attempts to contact the city and find out where her son was. That's what they referenced when they talked about the First Amendment claim. So we have petitioning activity that's going on, and there's a refusal to assist her, and that's what the court looks at. Now, I think all of Lee is dicta because neither party briefed this issue at all, but if one treats it as precedent, it involves expressive conduct. And then finally, counsel noted that, well, there could be a factual issue about past cohabitation. There is no authority anywhere from any circuit that has recognized standing to sue under either the 14th or the 1st based upon a prior relationship that no longer exists. I mean, under that analysis, an ex-spouse would have standing to sue post-divorce by virtue of the fact that they initially had a protected relationship even though  they were not married. So the focus has to be what is the relationship at the time of injury, not what was it years before. We've taken you past your time. Thank you, Your Honor. Thank you very much, Mr. Whiteside. Thank you. Thank you also. And the case of Mann v. Tenness and Lasogna is submitted.
judges: O'scannlain, Bea, Stearns